This appeal is from two matters, consolidated in the Superior Court, related to a mortgage granted by Roney L. Harris on real property located at 615 White Street in Springfield (property). In his action against PHH Mortgage Corporation (PHH), Harris prevailed only on his G. L. c. 93A claim because PHH had sent him a foreclosure notice at a time when a bankruptcy court judge had already determined that PHH did not hold the subject mortgage. In its action to quiet title to the property, PHH prevailed and obtained a judgment declaring that PHH now properly holds the mortgage and the corresponding note. Harris appeals from the judgment entered in PHH's action to quiet title.[3] We affirm.
We summarize the facts found by the trial judge after a two-day bench trial in June, 2014. In connection with his purchase of the property, Harris obtained a loan from BMC Mortgage Co. in MA (BMC). On February 13, 2004, he signed a note in the amount of $122,640 and executed a mortgage deed. On that same day, BMC executed two assignments of the mortgage-first to Mortgage Electronic Registration System, Inc. (MERS) and then to Cendant Mortgage Corporation (Cendant).[4] On March 8, 2004, MERS assigned the mortgage to BMC. On April 12, 2004, Cendant purported to assign the mortgage to MERS. On January 25, 2005, Cendant was merged into PHH.
In 2007, Harris stopped making payments on his loan. Thereafter, he filed a bankruptcy petition under Chapter 7 of the United States Bankruptcy Code. On January 29, 2008, Harris commenced an adversary proceeding in the bankruptcy court challenging PHH's rights in connection with the subject mortgage. On May 23, 2008, MERS purported to assign the mortgage and note to PHH, effective as of January 24, 2008.
On December 30, 2008, Harris's debt on the note was discharged. On July 19, 2010, judgment entered in the adversary proceeding, stating that PHH "did not hold a valid and perfected mortgage on [the] property of the Debtor ... on the date of the commencement of this case." According to the trial judge in his amended findings and rulings, the bankruptcy court judge had found "that the mortgage assignment from BMC to Cendant (predecessor to PHH) on February 13, 2004, was invalid, because BMC had previously assigned the mortgage to MERS, so BMC had no interest to assign."[5] In July, 2011, Harris's bankruptcy case was closed. The following month, PHH sent Harris a notice of mortgage foreclosure sale pursuant to G. L. c. 244, § 14.
On August 18, 2011, Harris filed an action in Superior Court to enjoin the impending foreclosure. On September 20, 2011, a judge issued a preliminary injunction in that matter, requiring PHH to cease and desist from proceeding with foreclosure on the property. In March, 2012, Harris amended his complaint to include additional claims against PHH, including under c. 93A.[6]
In April, 2012, PHH filed in the Superior Court its own action against BMC, seeking to quiet its title to the property. In that action, Harris was originally named as a party in interest and eventually was named as a defendant. Harris's action and PHH's action to quiet title were consolidated in the Superior Court by order dated August 9, 2012.
On December 5, 2012, a Superior Court judge allowed, in part, Harris's "amended" motion for summary judgment on the issue of PHH's standing to proceed with a foreclosure sale. In regards to that order, the judge stated that he was not declaring that PHH would never be able to perfect standing, but only that PHH did not currently have the requisite standing to proceed under G. L. c. 244, § 14. On April 10, 2013, BMC executed an assignment of the mortgage to PHH.
After the trial in Superior Court, the trial judge held that PHH had proved "that it is now the holder of the Note and Mortgage," and judgment entered for PHH on its quiet title action. As to Harris's action, based on the trial judge's findings that PHH committed a knowing and wilful violation of c. 93A, judgment entered for Harris solely on his c. 93A claim, awarding him nominal damages, which were doubled, and his remaining claims were dismissed.
Discussion. As the trial judge correctly stated, the discharge of a debt in bankruptcy only extinguishes the creditor's right to proceed against the debtor personally. See Christakis v. Jeanne D'Arc Credit Union, 471 Mass. 365, 367 (2015) (Christakis ), quoting from Johnson v. Home State Bank, 501 U.S. 78, 84 (1991) ("Essentially, 'a bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor in personam-while leaving intact another-namely, an action against the debtor in rem' "). It does not prevent the creditor from proceeding against the real estate that serves as collateral for the discharged loan. Christakis, supra at 367-368.
To be sure, as stated by the trial judge, the purported assignments by BMC to Cendant and then by Cendant to MERS were invalid because BMC had already assigned the mortgage to MERS before it purported to assign that same mortgage to Cendant. See Bongaards v. Millen, 55 Mass. App. Ct. 51, 55 (2002) (subsequent deed a nullity where title previously conveyed by grantor to different grantee). MERS validly assigned the mortgage back to BMC on March 8, 2004. But MERS's subsequent assignment of the mortgage to PHH on May 23, 2008, was then invalid because MERS had nothing to assign at the time. See ibid.
Accordingly, as of 2013, the mortgage was held by BMC, with the last valid assignment being the one from MERS to BMC on March 8, 2004. The trial judge correctly held, based on the April 10, 2013, assignment from BMC to PHH, that PHH was the lawful owner of the mortgage as of the time of trial.[7] ,[8]
Judgment entered October 21, 2015, affirmed.
Corrected judgment entered November 19, 2015, affirmed.
Order entered October 25, 2015, denying motion for reconsideration affirmed.
Order entered December 3, 2015, denying motion to dismiss affirmed.
Orders entered December 9, 2015, denying motions to dismiss, to rescind, and to reconsider affirmed.

Harris's notice of appeal also states that he appeals from the judgment entered in his action filed against PHH, claiming, in part, that the trial judge failed to assess more than nominal damages on his c. 93A claim, as well as appeals from various orders. However, we find no discussion of this judgment, or the orders, in his brief that rises to the level of proper appellate argument. Accordingly, we do not reach those issues. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); K.A. v. T.R., 86 Mass. App. Ct. 554, 567 (2014) (terse and conclusory assertions that do not "rise to the level of reasoned appellate argument as contemplated by Mass.R.A.P. 16 [a][4]" not considered by appellate court).

The trial judge found that on February 13, 2004, BMC first assigned the mortgage to MERS and thereafter assigned it to Cendant. This timing cannot be verified from documents in the record, but the documents do reveal that the assignment to MERS was recorded on February 13, 2004, while the assignment to Cendant was not recorded until June 28, 2004.

Only the bankruptcy court judgment is in the record. If the bankruptcy court judge issued separate findings and rulings, they are not before us. A portion of the transcript from the adversary proceeding is, however, included. This excerpt shows that counsel for PHH requested that the judgment entered in the adversary proceeding not exclude PHH's ability to obtain a corrective assignment in the future. In reply, the judge stated, "[T]hat's an advisory opinion and I, I don't do those. All I can tell you is that as of the date of the filing of the case PHH is, that, that PHH does not have an allowed secured claim." Harris seems to argue that the bankruptcy court judge determined that the mortgage was not a "perfected lien." The record presented on appeal is not sufficient to allow this panel to determine whether he made this argument at trial, although it is referenced in a letter Harris sent to the lower court and in his c. 93A demand letter. In any event, the bankruptcy court judgment does not suggest that any determination was made as to the validity of the mortgage itself. That judgment merely states that "PHH ... did not hold a valid and perfected mortgage" as of the commencement of the action. This does not mean that no such lien existed-it only means that PHH was not the holder of that lien at the relevant time.

According to the trial judge, the claims in Harris's amended complaint include intentional infliction of emotional distress, libel, quiet title, and abuse of process.

The trial judge also held that PHH was the holder of the note. Harris states in his reply brief that the indorsements on the note indicate that BMC indorsed the note as payable to Wachovia Mortgage Corporation and then crossed out that indorsement and indorsed it as payable to Cendant, which then indorsed the note in blank. Harris does not, however, explain the significance of the first indorsement. The record also does not disclose whether Harris raised this issue at the trial. See Shawmut Community Bank, N.A. v. Zagami, 30 Mass. App. Ct. 371, 372-373 (1991), S.C., 411 Mass. 807, 810-812 (1992) (obligation of appellant to include transcripts sufficient to determine whether issue raised on appeal was properly presented and preserved); Cameron v. Carelli, 39 Mass. App. Ct. 81, 84 (1995). Accordingly, we see no basis in the record before us for displacing the trial judge's determination that PHH is the holder of the note. Additionally, to the extent Harris challenges the trial judge's factual determination that PHH has physical possession of the note, he has not demonstrated that this factual finding is "clearly erroneous." Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). See N-Tek Constr. Servs., Inc. v. Hartford Fire Ins. Co., 89 Mass. App. Ct. 186, 190 (2016).

To the extent Harris has made other arguments that are not addressed here, they "have not been overlooked. We find nothing in them that requires discussion." Department of Rev. v. Ryan R., 62 Mass. App. Ct. 380, 389 (2004) (quotation omitted).